### BURNHAM ET AL. V. FREEMAN.

An irrigating ditch was constructed in 1872 by the owners of three claims. The owner of the middle claim abandoned it, and plaintiff's husband settled on it in 1877, and used water from the ditch from 1878 till 1881, and did some repairs on it. He then abandoned his wife and claim at once, and she succeeded to all his rights, and acquired a title from the United States. She used water from the ditch in 1882, with the acquiescence of the owners of the other claims. *Held* no evidence that she owned any interest in the ditch; such interest being real property, and only to be acquired by deed or prescription or condemnation. In any case her appropriation in 1878 would be subordinate to that of the owners of the other claims in 1872.

*Appeal from District Court of Larimer County.*

SUSAN FREEMAN, the appellee, was plaintiff, and George C. Burnham and Horace and Charles Emerson, appellants, were defendants, in the court below. The plaintiff, claiming a third interest in an irrigating ditch formerly known as the " Gilchrist, Baker and Emerson ditch," and that defendants had disturbed her use thereof, brought this action to restrain future disturbance by

them, and to recover damages for past injuries. This ditch received its water from Lone Pine creek, in Larimer county, and was constructed in 1872 by the two Emersons, who are defendants, a person by the name of Gilchrist, and one E. L. Baker. These parties had three claims upon the public domain on said creek, which were contiguous,— the Gilchrist claim being the uppermost, Baker's the next, and the Emerson claim the lowermost of the three. The ditch was built designedly to irrigate such portions of these claims as lay under the same. It was taken out above the Gilchrist claim and ran across it and the Baker claim to the Emerson claim. Water was used from said ditch in 1872 by Gilchrist in irrigating a part of his claim, and was also used that year by the Emersons in irrigating a part of their claim, but shortly after the building of the ditch Baker abandoned his claim without having used any water thereon from said ditch for any purpose, and none was used upon any part of the land included in the Baker claim until the year 1878, and not then by Baker, or for him, but by one Freeman, the husband of the plaintiff, who had settled upon the Baker claim in October, 1877. Freeman continued to reside upon this land with his family, and continued the use of water therein from said ditch each year, until some time in 1881, when he left the place, deserting it and his family. The plaintiff remained upon the land, and has since acquired title thereto from the United States government, and she used water from said ditch to irrigate a portion of her land in 1882, and claims to have done work upon the ditch that year in the way of repair. It is conceded that her husband did some work at repairing the said ditch while he lived upon this land, but the defendants claim that he did so, not as a party interested in the ditch, but solely in consideration for the temporary use of water from said ditch, and that he never became the owner of, or acquired or contracted for, an interest in said ditch; and that the plaintiff had

no interest therein at the time of bringing this action, or at any time, but that what water she used therefrom, in 1882, was by the sufferance or permission of the defendants. The defendant Burnham purchased the improvements upon the Gilchrist claim, and the Gilchrist interest in said ditch, in 1876, and during that year he and the Emersons repaired the ditch at considerable expense, and divided and used the water thereof equally between them in irrigating their respective claims, and the crops grown thereon. A jury was impaneled and sworn to try the issues, and under an order of the court, the parties consenting thereto, said jury was required to return a finding upon the following questions: "(1) Was the plaintiff at the time of filing her complaint herein entitled to use water from the irrigating ditch mentioned in her complaint, to irrigate her lands and crops mentioned in said complaint? (2) Did the defendants, or either of them, wrongfully prevent or interfere with plaintiff's right to the use of water from the irrigating ditch mentioned in said complaint, to the damage of the growing crops of plaintiff mentioned in said complaint; and, if the jury find affirmatively upon both of these issues, what amount of damages has the plaintiff sustained in consequence thereof?" The court instructed the jury, at the close of the testimony, to return a verdict in favor of the plaintiff upon both questions thus submitted, and to insert such sum for damages as they might find from the evidence the plaintiff had sustained. A verdict was returned accordingly, and for $233.70 damages in favor of the plaintiff. Upon this verdict a judgment was rendered, and a perpetual injunction granted, restraining the defendants from interfering with or obstructing the rights of the plaintiff in the premises, as found in and by the decree of the court. This action was brought in June, 1883, and a temporary injunction was then granted. It was tried in March, 1884. The decree finds, substantially, that the ditch was constructed expressly

for the benefit of the lands lying thereunder and em-
braced within the three claims aforesaid while the same
were government lands, and was of sufficient capacity
to irrigate the same; that the plaintiff had succeeded to
her husband's rights in the land originally claimed by
Baker, and to her husband's rights in said ditch; that
she, and her husband before her, had, as an owner
therein, used water from said ditch since the spring of
1878, with the knowledge and consent of the defendants,
for the irrigation of her said land, and without charge
therefor, up to the month of March, 1883, when the de-
fendants wrongfully prevented her from the further use
of such ditch, and the waters thereof, to her damage in
the sum found by the jury; and that she and her said
husband had, with the like consent and knowledge of
the defendants, made valuable improvements upon said
ditch. The decree concludes as follows: "Wherefore it
is considered, adjudged and decreed by the court that the
said plaintiff be at liberty to use said irrigating ditch in
connection with the defendants, according to her propor-
tionate needs, and a proportionate share of the water
thereof, for the irrigation of her said land, and for the
cultivation of the growing crops thereon, without let,
hinderance or interference by the said defendants, or
either of them, subject to the duty and obligation on her
part to do her proportionate share of work, and to bear
her proportionate share of expenses in maintaining and
keeping said ditch in repair; and that the said defendants
be, and they are hereby, perpetually enjoined from in
any manner interfering with or preventing the plaintiff
from so using said irrigating ditch, and the waters
thereof, for beneficial use in the irrigation of her said
land, and the cultivation of growing crops thereon, as
aforesaid. And it is further considered by the court that
the said plaintiff do have and recover of and from the
said defendants the said sum of $233.70, her damages so
as aforesaid assessed by the jury, and herein specially

found in her favor by the court, together with her costs in this behalf laid out and expended, to be taxed, and that she have execution therefor." Before the decree was entered a motion was interposed by the defendants for a new trial. This motion was denied. The defendants have brought the case to this court by appeal, and ask for a reversal of the judgment.

Messrs. BALLARD and ROBINSON and HAYNES, DENNING and ANNIS, for appellants.

Messrs. TILFORD, GILMORE and RHODES, for appellee.

DE FRANCE, C. The plaintiff in her complaint alleges an ownership in herself of an undivided one-third interest in the irrigating ditch in question. The decree of the court does not designate specifically what interest the plaintiff owns in said ditch, but the inference therefrom is that she is the owner of a one-third interest. She is awarded by the decree a proportionate share of the water of said ditch for the irrigation of her land and crops. In this respect the decree is erroneous, as it ignores the principle of priority of appropriation. Water was used upon Burnham's land, and likewise that of the Emersons, in 1872, and thereafter, while it was not applied to the land now owned by the plaintiff until the year 1878. But the foundation of this action is an ownership by plaintiff of some interest in the ditch. She claims no contract right to the use of water therefrom, but her claim is based solely upon the ground of an ownership therein. In order, therefore, for her to recover, it was incumbent upon her to establish the fact that she owned an interest in the said ditch. Upon this point the evidence is not sufficient. She acquired no interest from Baker. His interest in the ditch did not pass to the United States government upon the abandonment by him of his claim to the land now owned by the plaintiff, and she therefore acquired no interest in the ditch by

her conveyance from said government. Neither the plaintiff nor her husband purchased the improvements made by Baker upon said land, or any interest of Baker in the said ditch. The repairs or improvements made upon the ditch by the plaintiff and by her husband did not invest the plaintiff or her husband with an ownership in the ditch, and no verbal declarations of the Emersons could do so; nor did the use of water from such ditch, with the consent of the defendants, to water the land owned by plaintiff, operate to convey an interest in the ditch to the plaintiff or her husband. All these things combined could have no such effect, yet these are all the facts shown by the evidence to establish such right or interest. The ditch was constructed and in operation, and in the lawful possession of the defendants, before the plaintiff or her husband settled upon the said land. It was a private ditch, belonging to individuals, and not to an incorporated company. The law recognizes but two ways of acquiring, by purchase, an ownership interest in such a ditch. One is by deed or prescription, which presupposes a grant, and the other is by condemnation. An interest in such a ditch is an interest in realty. It cannot pass by a mere verbal sale. *Smith v. O'Hara*, 43 Cal. 371. The evidence being insufficient to show an ownership in the plaintiff in such ditch, the judgment and decree must be reversed.

RISING, C., concurs. STALLCUP, C., dissents.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment of the court below is reversed. Plaintiff was entitled to appropriate sufficient of the unappropriated water remaining in the natural stream to irrigate her land. The water which Baker originally intended to, but did not, divert, she might take, provided it yet remained unappropriated. If it were necessary to take the water across defendant Burnham's land, and if

she failed by contract to purchase an interest in the ditch over this land, she could proceed under the statute to condemn the right of way for a new ditch, or to condemn the right to use the ditch already constructed. But, in any event, the priorities of the appropriations belonging to Burnham and the Emersons would be superior to that of plaintiff, made eight or ten years afterwards.

*Reversed.*