## DOWNING V. MORE ET AL.

1. IRRIGATING DITCHES — ENLARGING PRIVATE DITCHES ON OWNER'S LAND WITHOUT HIS CONSENT.— A purely private party may have a right of way condemned for a ditch through the lands of another to convey water to his lands for domestic, agricultural or mining purposes.

2. The statutory right to enlarge and use the ditch of another applies, however, only to such ditches as have been constructed *through* lands for the benefit of adjoining proprietors, and not to those constructed by the owner of land to water his own land exclusively. *Tripp v. Overocker,* 7 Colo. 72, modified.

*Appeal from County Court of Jefferson County.*

THIS action was brought by the appellees, Richard B. More and Thomas Howlett, under the eminent domain act, for the purpose of securing the right to enlarge a ditch over intervening land of appellant, and to become joint users with him of such enlarged ditch.

It appears from the petition and evidence in the case that appellee More was seized and possessed of a certain eighty-acre tract of land, and that appellee Howlett had the possessory right to the adjoining eighty acres, and that the appellant was the owner of a quarter section of improved land lying between the lands of the petitioners and the Agricultural ditch, a large irrigating ditch tak-

ing water from one of the natural streams of the state —
said ditch being the common source of water supply for
all the parties to this action; and that, for the purpose of
irrigating his said lands, appellant had constructed a
small ditch with an average but not uniform grade of
sixty-eight feet to the mile, upon a high ridge near the
center of his land, which ditch extended nearly the en-
tire distance across the land of appellant from west to
east, terminating near the lands claimed by appellees.
The action was tried in the court below on the theory
that if it was necessary for the petitioners to convey
water upon their premises for domestic or agricultural
purposes through the lands of the appellant, then, under
the statute enacted in the year A. D. 1881, they were
compelled to do so by enlarging appellant's ditch, and
could not condemn a right of way for an independent
ditch, provided that such an enlargement was feasible
and practicable.    The act of 1881 referred to is as follows,
to-wit:

"Section 1.    That no tract or parcel of improved or
occupied land in this state shall, without the written con-
sent of the owner thereof, be subjected to the burden of
two or more irrigating ditches constructed for the pur-
pose of conveying water through said property to lands
adjoining or beyond the same, when the same object can
feasibly and practicably be attained by uniting and con-
veying all the water necessary to be conveyed through
such property in one ditch.

"Sec. 2.    Whenever any person or persons find it nec-
essary to convey water, for the purpose of irrigation,
through the improved or occupied lands of another, he or
they shall select for the line of such ditch through such
property the shortest and most direct route practicable
upon which said ditch can be constructed with uniform
or nearly uniform grade, and discharge the water at a
point where it can be conveyed to and used upon the

land or lands of the person or persons constructing such ditch.

"Sec. 3.  No person or persons having constructed a private ditch for the purposes and in the manner hereinbefore provided shall prohibit or prevent any other person or persons from enlarging or using any ditch by him or them constructed in common with him or them, upon payment to him or them of a reasonable proportion of the cost of construction of said ditch."  Sess. Laws 1881, p. 164.

The trial resulted in the jury finding the value of the land sought to be condemned to be $175, and assessing the damages to the residue of the land at $1.  The court sustained the verdict, and, upon the payment of the money into court, awarded a right of possession to the petitioners; whereupon the respondent, having duly excepted, brought the case here by appeal.

Messrs. L. B. FRANCE and H. N. SALES, for appellant.

Mr. A. H. DE FRANCE, for appellees.

MR. JUSTICE HAYT delivered the opinion of the court.

The right of a purely private party to condemn a right of way for a ditch to convey water to his lands for domestic, agricultural and mining purposes is guarantied by the constitution, and the manner of exercising the right is regulated by statute.  *Tripp v. Overocker*, 7 Colo. 72.

Under the statute as it existed prior to the act of 1881 any number of farmers cultivating separate tracts of land below, whenever it became necessary for them to bring water through the lands of another lying above, in order to obtain a sufficient fall for the purpose of irrigation, might each condemn a right of way for the construction of a separate ditch through such lands, thus

burdening the servient estate with one ditch after another until its value would be greatly reduced, or perhaps totally destroyed, with no authority in the proprietor to prevent the same. Gen. St. § 1712.

So long as the state remained but sparsely settled, and mining and stock-raising were the chief industries, no particular hardship resulted from such a law; but with the increase of settlement, the growth of the agricultural interests, and the rise in the value of farming lands, a change in the law became imperative, and in obedience to this demand the statute of 1881 was passed. It will be noticed that in the *first* section of the act provision is made against burdening improved or occupied lands with two or more ditches for the purpose of conveying water through such lands without the owner's consent; while by section *two* the route to be selected through said lands is designated. The *third* section is to give effect to the first and second sections by prohibiting a party who has constructed a ditch to convey water through such lands to lands adjoining or beyond from preventing other parties from enlarging and using such ditch when necessary for the purpose of conveying water through the same lands.

That this is the proper construction to be given to the act of 1881 we have no doubt. It was never intended to have any application to cases like the one at bar. Here the ditch sought to be enlarged is a small one, constructed by the respondent for the irrigation of his farming lands, and not for the purpose of running water through said lands to lands adjoining or beyond the same. The statute, in express terms, limits its application to ditches constructed for the purpose of conveying water through such property, and speaks of such ditches as a burden. The ditch of respondent is not a burden to his land, but an improvement upon the same. Under the statute, two or more outside parties cannot burden the servient estate

with two or more ditches and two or more easements, without the owner's consent, when it is practicable to accomplish the same object, by imposing but one burden. If there was no other practicable or feasible route for the ditch, perhaps the courts might compel the respondent to allow the enlargement of his ditch by the appellees; but this would not be by virtue of this statute, but would arise from the necessities of the case. In the case at bar no such necessity is shown to exist, but on the contrary it is shown that water had been taken through this same quarter section to and upon the lands of one of the appellees by another and different route used by him for several years, upon the verbal consent of the respondent, and that such a route would be practicable for the purposes of conveying water to the lands of both More and Howlett. It further appears that the small ditch sought to be enlarged was not constructed upon any uniform grade, but that it had an average grade of sixty-eight feet to the mile, and that by increasing its capacity as proposed by the appellees the velocity of the water would be accelerated to such an extent as to cause the ditch to wash into the soil, and destroy in a large measure the usefulness of the ditch to the appellant.

Under the statute, a party constructing a ditch through the improved or occupied lands of another without his consent must "select for the line of such ditch through such property the shortest and most direct route practicable upon which such ditch can be constructed with uniform or nearly uniform grade." There are good reasons for the statute requiring others to enlarge a ditch constructed upon such a route whenever practicable, if it afterwards becomes necessary for them to convey water through the same lands; but a farmer in distributing water upon his own lands may have but little regard to the grade of his small ditches or laterals, and the statute does not contemplate the enlargement by others of such

ditches, and thus not only burdening his lands with an easement, but compelling him against his will to accept such parties as co-tenants with him.

In the case of *Tripp v. Overocker*, *supra*, the court, in speaking of the effect of this statute upon the rights of a party seeking to condemn a right of way for a ditch through the lands of another, said: "It simply undertakes to regulate the exercise thereof so as to inflict the least possible inconvenience and injury upon the owner of the servient estate." This beneficial purpose of the statute was overlooked upon the trial below. The uniformity of grade required was ignored; and a law enacted for the protection of the owner of the estate about to be burdened with a ditch against his will was given a construction which is calculated to work great and unnecessary injury in many cases. It is evident that the judgment of the court below resulted from a misconception of the statute of 1881, and the case of *Tripp v. Overocker*, *supra*, is cited by counsel in support of the ruling of that court. An examination of the opinion in that case will show that the only questions presented to the court were in reference to the proper form of the action in proceedings under the eminent domain act and the constitutionality of the act itself. No question as to the applicability of the statute to cases like the one at bar was either argued or presented in that case. But some of the expressions therein used seem to be inconsistent with the foregoing views. To the extent of such conflict or inconsistency that opinion is modified.

The judgment of the court below is reversed and the cause remanded.

*Reversed.*