### BROADMOOR LAND CO. v. CURR.

(Circuit Court of Appeals, Eighth Circuit. December 28, 1905.)

No. 2,112.

1. COURTS—UNITED STATES COURTS—CONFORMITY TO STATE PRACTICE—CONDEMNATION PROCEEDINGS.

Upon the removal into a federal court of proceedings for the condemnation of land under the laws of a state, such court is limited in its powers, and governed as to its procedure, by the statutes of the state prescribing the mode of procedure in such cases in the state courts.

2. EMINENT DOMAIN—PROCEEDINGS TO TAKE PROPERTY—APPOINTMENT OF COMMISSIONERS.

Const. Colo. art. 2, § 15, provides that, in proceedings for the condemnation of property for public or private use, the compensation to be made to the owner "shall be ascertained by a board of commissioners of not less than three freeholders or by a jury when requested by the owner of the property in such manner as may be prescribed by law." Mills' Ann. St. Colo. § 1720, provides, with reference to such proceedings, that "the court * * * shall by entry in its minutes appoint a board of commissioners of not less than three freeholders, to ascertain and determine the necessity for taking such lands, franchises, or other property, and to appraise and determine damages and compensation. * * *" *Held*, that such provisions as construed by the Supreme Court of the state impose upon the court in which such proceedings are pending, whether state or federal, the positive duty to appoint such commissioners, and that it was error to refuse a request for such appointment · by the

·landowner, even though the request was for their appointment only for the purpose of ascertaining and determining the necessity for the proposed taking.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, § 582.]

3. SAME—WAIVER OF JURY.

Mills' Ann. St. Colo. § 1721, provides that any party to proceedings for the condemnation of land "before the appointment of commissioners * * * and before the expiration of the time for the defendant to appear and answer may demand a jury of freeholders residing in the county in which the petition is filed to ascertain, determine and appraise the damages or compensation to be allowed." *Held*, that where a defendant landowner removed condemnation proceedings into a federal court and appeared therein, and answered on the date set by the court for hearing the cause, without at that time demanding a jury, it waived its right to such jury, and could not thereafter be heard to say that such date was not the time for it to appear and answer.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Colorado.

Some time prior to the 8th day of September, 1903, Curr filed in the district Court of El Paso county, Colo., a petition in condemnation proceedings, whereby he sought to obtain a judgment of that court authorizing and empowering him to enlarge the Myers ditch, described in said petition, and also to condemn certain lands for the purpose of constructing the Curr reservoir ditch; said enlargement of the Myers ditch and the construction of the Curr reservoir ditch being for the purpose of carrying to petitioner's reservoir the surplus and flood waters of North and South Cheyenne Creeks. The Broadmoor Land Company, as the owner of the Myers ditch and also a portion of the land, sought to be condemned for the construction of the Curr reservoir ditch, was made a party defendant in said proceedings, and on the 8th day of September, 1903, duly removed said proceedings into the United States Circuit Court for the District of Colorado; said land company being a citizen of the state of New Jersey, and Curr being a citizen of Colorado. On October 16, 1903, Curr filed an amended petition in said United States Circuit Court, and on the same day that court made an order that the cause be set down for hearing on the 23d day of November, 1903, in so far as the same pertained to the controversy between the petitioner and the Broadmoor Land Company. No process or order was served upon said company in said proceeding so far as shown by the record, but on the 23d day of November, 1903, it filed an answer to the petition of Curr, wherein it alleged, among other defenses, facts tending to show that there was no necessity for enlarging the Myers ditch and that to do so would not be practicable or feasible, also facts tending to show that the Myers ditch was not a private ditch, and therefore not subject to enlargement at the suit of petitioner, under the laws of Colorado. A reply was filed by Curr to the amended answer of the Broadmoor Land Company filed January 11, 1904. On January 9, 1904, the Broadmoor Land Company filed a petition in said proceedings, which is in the following language: "Now comes the respondent, Broadmoor Land Company, and prays the court for an order appointing a board of commissioners of not less than three freeholders, as provided by law, to ascertain and determine the necessity, if any there be, for the enlargement of the Myers ditch, described in · the petitioner's amended petition and in this respondent's answer thereto, or for the taking possession thereof for the purpose of such enlargement or the use of said Myers ditch for the purpose of flowing water through the same by the petitioner, and to ascertain and determine the necessity for taking any of the lands or property of this respondent for the purpose of the construction of the ditch proposed and described in the amended petition, or any other ditch. And your petitioner further prays that such a board of commissioners shall be appointed by this court as provided by the statutes of the state of

Colorado in such case made and provided, and that, when so appointed, the inquiry and jurisdiction of such board of commissioners be limited to the single question of ascertaining and determining the necessity, if any, for the proposed taking and enlargement of the said Myers ditch, and the necessity for the proposed flowing of water through the same by the petitioner and the necessity of taking any other lands and property of this respondent for the purpose of constructing a ditch over or across the same at any time or at any place." Also on the same day said company filed a petition in said proceedings in the following language: "Now comes the respondent, Broadmoor Land Company, without in any way waiving its petition for a board of commissioners, to ascertain and determine the necessity of enlarging the said Myers ditch or the taking of any of the lands or property of this respondent, but insisting upon its rights to have such board of commissioners appointed to determine the question of necessity, as aforesaid, and prays and requests the court that, in the event such board of commissioners shall find there is necessity for the enlargement of said Myers ditch, or for the taking of any lands or property of this respondent in this proceeding, that the question of damages or compensation to be allowed this respondent for such enlargement of said Myers ditch, and such taking of the lands and property of this respondent may be heard and inquired of by a jury of freeholders to be selected, impaneled, and sworn as provided by the statutes of the state of Colorado in such case made and provided." Both of said petitions were denied by the court on January 18, 1904, and an exception taken to such rulings. On the 2d day of February, 1904, said case came on for trial before the court and a jury selected from the regular panel of jurors in attendance upon the court. Eleven of the jurors who composed the trial jury were nonresidents and nonfreeholders of the county of El Paso; that being the county. in which the petition was filed. Each of said 11 jurors was challenged by counsel for the Broadmoor Land Company for the reason that they were not residents and freeholders of El Paso county, which challenge was by the court denied. After the jury were impaneled, and before the trial commenced, counsel for the Broadmoor Land Company again asked for the appointment of commissioners to determine the necessity, practicability, and feasibility of the proposed taking. The trial proceeded against the protest of counsel for the Broadmoor Land Company, and only two questions were submitted by the court to the jury, viz., "First. What is the market value of the strip of land actually taken for right of way for ditch purposes? What is its value at this time? Second. To what extent, if at all, are the remaining lands of the respondent, Broadmoor Company, depreciated in their value by the construction of the ditch over the strip taken?" The jury returned a verdict for petitioner, and assessed the damages for land taken and damaged at $2,500. Judgment having been entered on this verdict, the Broadmoor Land Company procured a writ of error from this court to reverse the same.

Charles W. Waterman (Joel F. Vaile, on the brief), for plaintiff in error.

Willis L. Strachan, for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS and CARLAND, District Judges.

CARLAND, District Judge, after stating the case as above, delivered the opinion of the court.

After removal of this case from the district court of El Paso county to the United States Circuit Court for the District of Colorado, the latter court was bound to follow the statutes of Colorado regulating the taking of private property for public purposes and the ascertainment of proper compensation therefor. As was said in East Tennessee V. G. R. R. Company v. S. T. Co., 112 U. S. 310, 5 Sup. Ct. 169, 28 L. Ed. 746:

"The remedy is statutory only, and every court which takes jurisdiction is limited in its powers by the statute under which alone it can act. * * * The courts of the United States, on the removal of the proceedings from the probate court, were clothed with no greater power in the premises than the courts of the state would have possessed if their jurisdiction had been preserved."

And as was again said in Traction Company v. Mining Co., 196 U. S. 253, 25 Sup. Ct. 256, 49 L. Ed. 462:

"After the removal of a case of condemnation from a state court the federal court would proceed under the sanction of state legislation. * * * Speaking generally it is for the state primarily and exclusively to declare for what local public purpose private property within its limits may be taken upon compensation to the owner, as well as to prescribe a mode in which it may be condemned and taken." Postal Company v. Southern Company (C. C.) 122 Fed. 156; Murray v. American Surety Co., 70 Fed. 341, 17 C. C. A. 138, and cases cited.

This court in vacating the supersedeas granted by the court below held that, as the statutes of Colorado denied a supersedeas on appeal in condemnation proceedings, none could issue in this case. Broadmoor v. Curr, 133 Fed. 37, 66 C. C. A. 143. The Constitution of Colorado, art. 2, § 15, provides:

"That private property shall not be taken or damaged for public or private use without compensation. Such compensation shall be ascertained by a board of commissioners of not less than three freeholders or by a jury when requested by the owner of the property in such manner as may be prescribed by law."

In order to provide for the execution of this requirement of the Constitution, the Legislature of the state enacted sections 1720 and 1721, Mills' Ann. St. Colo. Section 1720 is as follows:

"The court or judge may adjourn the proceedings from time to time, shall direct any future notice thereof to be given that may seem proper, shall hear proofs and allegations of all parties interested touching the regularity of the proceedings and shall by entry in its minutes appoint a board of commissioners of not less than three freeholders, to ascertain and determine the necessity for taking such lands, franchises or other property and to appraise and determine damages and compensation to be allowed to the owner and person interested in the real estate or property proposed to be taken, or damaged, in such county, for the purposes alleged in the petition and said court or judge shall fix the time and place for the first meeting of such commissioners."

Section 1721 is as follows:

"Any party to any proceeding brought under the provision of this act before the appointment of commissioners as in section 6 aforesaid provided and before the expiration of the time for the defendant to appear and answer may demand a jury of freeholders residing in the county in which the petition is filed, to ascertain, determine and appraise the damages or compensation to be allowed; such demand may be in the pleadings, or by a separate writing filed with the clerk. Such jury shall consist of six persons, unless a larger number shall be demanded by any party to the proceeding but in no case shall the number of jurors exceed twelve, and any party so demanding a larger number than six jurors shall advance the fees for such additional jurors for one day's service, according to the rate allowed jurors in the district court."

Every owner of property in Colorado at the time of the proceedings herein set forth held it subject to the exercise of the right of

eminent domain in the manner provided by the Constitution and laws of the state. Except by strict compliance with the statutes and laws, could the property of any person be taken under the right of eminent domain? There are two methods provided by the Constitution and laws heretofore quoted for the ascertainment of compensation for the taking or damaging of private property under the right of eminent domain. They are, first, by a board of commissioners; second, by a jury of freeholders residing in the county in which the petition is filed. A jury, however, cannot be impaneled for such purpose in any event, unless some party to the proceeding requires it, nor unless said party shall require it before the appointment of commissioners as provided in section 1720 (same as section 6 referred to in section 1721) and before the expiration of the time for the defendant to appear and answer. Section 1721.

We are inclined to the opinion that when the United States Circuit Court fixed a time for the hearing of the case, to wit, November 23, 1903, and the Broadmoor Land Company appeared and filed its answer and did not at that time demand a jury, it could not subsequently be heard to say that such date was not the time for it to appear and answer. The record does not show that any process or order was ever served upon the land company, either in the state or federal court, but it had appeared and removed the case. The court had the power to make the order that it did, and the land company obeyed it without question by appearing and filing its answer. We therefore think that the time to appear and answer within the meaning of section 1721 and under the facts in this case expired November 23, 1903, and that therefore there was no error in the ruling of the court in denying the petition for a jury filed by the land company January 9, 1904.

The Broadmoor Land Company having thus waived its right to try out the question of damages and compensation by a jury, it becomes unnecessary to discuss the case of C. F. & I. Co. v. Four Mile Company, 29 Colo. 90, 66 Pac. 902, for the purpose of determining whether or not the court held in that case that such jury could be called from the regular panel in attendance at court, notwithstanding they may not have been freeholders at all. We are of the opinion, however, that the Circuit Court erred in not appointing three commissioners, freeholders, to ascertain and determine the necessity for taking the property, and the compensation to be allowed to the owner. In Sand Creek L. I. Co. v. Davis, 17 Colo. 326, 29 Pac. 742, the answer did not expressly take issue on the question of the necessity of the taking or the enlarging the ditch; but it traversed the allegation of the petition that it was feasible and practicable. The court seemed to have treated the issue as to feasibility and practicability as tantamount to that of necessity. It said:

"When a material question as to the necessity, or, as in this case, as to the feasibility and practicability, of taking, is raised, the regular order of procedure is to have such question tried and determined in limine; that is, before any inquisition for ascertaining the compensation and damages is entered upon. * * * In this state it has been held that the province of the court and jury are defined by the terms of the act of eminent domain. In

like manner it must be held that the province of the board of commissioners is fixed by the terms of said act. It has been said, also, that the statute must be strictly pursued. Certainly its requirements must be substantially complied with, so far as they are properly invoked by either party. By section 6 (which is the same as the present statute) of the original act, the court is required to appoint a board of commissioners to ascertain and determine the necessity for taking lands, franchises, or other property, and to appraise and award damages and compensation to be awarded to the owner."

The court then proceeded to say that while the defendant was entitled to have the compensation and damages ascertained either by a board of commissioners or by a jury at its election, etc., and then said:

"If it desired to have the question of the feasibility and practicability of the question determined, such question must have been referred to a board of commissioners appointed by the court as the law directs. * * * It is suggested by counsel for appellee that the defendant company, by demanding a jury, waived the right to have commissioners appointed, and thus waived the right to have the question determined whether or not it was feasible or practicable for petitioners to secure the proposed right of way through said ditch. This would seem to be contrary to the substance, if not the letter, of the statute. The privilege of a jury trial is unconditional, and, when demanded in proper time, it must be allowed. The demand and allowance of the jury does not of itself amount to a waiver of any other right which a party may have in the proceeding. A party may demand a jury to try the question of compensation and damages, and at the same time *or at any time before entering upon such trial* [italics ours] may demand the appointment of a board of commissioners to try the question of the alleged necessity, or, as in this case, the question of the alleged feasibility or practicability of the taking."

This decision has never been overruled. The case of Union Pacific Railroad Co. v. Colorado Postal Telegraph Cable Company, 30 Colo. 133, 69 Pac. 564, 97 Am. St. Rep. 106, was a proceeding to condemn on the railroad's right of way ground for the erection of telegraph poles. As the necessity for adopting the one line or route for such public service corporation rests within the fair judgment of the directors of such corporation, the question of such necessity could not be committed to commissioners. It was of such a condition that the writer of the opinion, arguendo, said the question of necessity for the taking was not raised by the pleadings, and that it was "never intended that commissioners should be required to determine questions, the solution of which depends upon the application of intricate questions of law, such as would be presented by the trial of issues tendered by the answer of respondent." The issues thus referred to were allegations to the effect that the corporation seeking the condemnation was a foreign corporation, and that it was intended to evade the laws of the state by showing that there was a public road near by which it could use; and the court, inter alia, instructed the commissioners, in the absence of bad faith or improper motives on the part of the petitioner, it had the right to determine the route and location of its line of telegraph, and that its officers in good faith determined to build such line, and selected the right of way in question, then the necessity mentioned in the statute is established. The court evidently did not intend to give utterance to any view in contradiction of its ruling in Sand Creek, etc., v. Davis, supra, which

was predicated solely of the ditch law, as it cites the latter case in its opinion without dissent. Indeed, it would not be a construction of the statute, but a judicial repeal of it, for any court to say that the question of necessity in a case like this may not be referred to the designated commissioners. The statute is imperative. It declares that the court or judge "shall by an entry in its minutes, appoint a board of commissioners of not less than three freeholders to ascertain and determine the necessity for taking such land, franchises or other property and to appraise and determine damages and compensation to be allowed to the owner or persons interested in the real estate or property proposed to be taken or damaged in such county for the purposes alleged in the petition. And said court or judge shall fix the time and place for the first meeting of such commissioners." The question of necessity under the ditch law is one easily determinable by commissioners because it pertains to the situation of the two parties, the feasibility and practicability of selecting another route without interfering with the exclusive occupancy of the present owner; and the court, in Sand Creek, etc., v. Davis, supra, speaking of this matter, said:

"The Legislature evidently perceived good reasons for vesting the exercise of such authority in commissioners specially selected by the court, instead of conferring the same upon a jury drawn by chance from a large list selected by the clerk."

It is true that counsel for plaintiff in error in his motion for the appointment of such commissioners requested that their function when appointed be limited to an inquiry as to the necessity of such proposed taking. In the answer, however, to the petition, the defendant below repeatedly denied the necessity for such taking, thus presenting this direct issue, which was responsive to the allegations of the petition. But with or without any such motion or request by the plaintiff in error the statute itself imposed the imperative duty on the court or judge to appoint such commissioners, and it refers the designated matters to them for determination. No matter, therefore, what limitations the plaintiff in error may have preferred to be placed on the commissioners when appointed, the statute points out and commands what the functions of the commissioners are, and the court or judge has no power to restrict it. It was the plain duty of the court to follow the specific mandate of the statute. At no time in the progress of this case did the court ever concede to the plaintiff in error the right of a hearing as to the issue of necessity for the taking, or as to whether this was a private ditch within the meaning of the statute; but passed by the important and material matters placed by the statute and the pleadings in the forefront of the exercise of the right to condemn the plaintiff in error's ditch to the use of the petitioner, and allowed no hearing except as to the amount of damages and compensation, and that before a jury improperly called.

The judgment below should be reversed, and a new trial granted, and it is so ordered.

SANBORN, Circuit Judge (dissenting). I agree with the majority of the court that the Broadmoor Land Company waived its

right to a jury of freeholders to try the question of compensation for the property taken in this suit by its failure to demand such a jury at or before the time it filed its answer. Its answer had been on file 46 days before it made any such demand and the issue regarding compensation had been set for trial before the regular panel of jurors at the February term. The court was not, therefore, in error in its refusal to permit a trial of this issue before a jury of freeholders drawn from El Paso county.

Was it in error because it failed to appoint commissioners to try this issue? The plaintiff in error is conclusively estopped from so contending, because it expressly requested that the power of the commissioners, whose appointment it prayed, should be limited to the trial of the question of the necessity of the taking of property of the land company, and that such commissioners should not have any authority to try the issue of compensation. In view of this consent and express request, the land company cannot now be permitted to reverse the judgment below because the court did not cause the issue to be tried before a tribunal which it had expressly requested the court to prevent from considering or determining it. As the Broadmoor Land Company thus estopped itself from claiming a trial of this issue by a jury of freeholders and by commissioners, the court in my opinion was fully authorized to try the question of compensation before the regular panel of jurors at the term at which it was set for trial before the demand for the commissioners, or the demand for a jury of freeholders had been made. Colorado Fuel & Iron Co. v. Four Mile Ry. Co., 29 Colo. 90, 98, 99, 100, 66 Pac. 902; O'Connell v. Reed, 56 Fed. 531, 5 C. C. A. 586. In the former case it is held that the question of compensation, after waiver of a jury of free-holders, may be tried before the regular panel in the state of Colorado, and in the latter the general rule which, in my opinion, governs this case, is declared that the federal court, especially where a waiver of special proceedings has been made, as in this case, may proceed in the trial of an issue according to the usual practice and before the customary tribunals in such courts.

Nor does it seem to me that the court below was in error in its refusal to appoint commissioners to determine the necessity of the taking of the property of the land company. Section 1720, Mills' Ann. St., requires the court or judge to "hear proofs and allegations of all parties interested touching the regularity of the proceedings and to appoint a board of commissioners to ascertain and determine the necessity for taking the lands." But the only question relative to such a taking, which the commissioners are authorized to determine under this statute, according to the decision of the Supreme Court of Colorado construing it, which is conclusive here, is the amount of land or property which it is necessary to take. Gibson v. Cann, 28 Colo. 499, 66 Pac. 879. The question of the necessity of taking land and property from the owner, the question whether or not the purpose for which the property is to be taken is a public one, and the question whether or not the ditch is of such a nature, under the statute of the state, that it may be enlarged, are questions which the court must answer, because

the correct answers to them are conditioned by rules of law of which commissioners cannot have competent knowledge. The decision of the Supreme Court of Colorado upon these questions, as it constitutes a construction of the statutes of that state, controls in this court, and that court has so decided. Union Pacific R. Co. v. Colorado, etc., Tel. Co., 30 Colo. 133, 137, 69 Pac. 564, 97 Am. St. Rep. 106.

There was no question of the amount of land or property which it was necessary to take presented by the pleadings in this case. The only question was whether it was necessary to take any of the land and property sought. That issue presented nothing but a preliminary question which the court was required to decide, and which the commissioners could not determine.

As the commissioners would have had no function to perform in this case if they had been appointed, it was not, in my opinion, error for the court below to refuse to appoint them, and the judgment below should be affirmed.